## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| LOUIS J. PETERSON, D.C., and LUTZ SURGICAL PARTNERS, PLLC, on their own behalf and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, and UNITED HEALTHCARE SERVICE LLC,<br><br>     Defendants. | **CLASS ACTION COMPLAINT** |

Plaintiffs Louis J. Peterson, D.C. ("Dr. Peterson") and Lutz Surgical Partners, PLLC ("Lutz") (collectively, "Plaintiffs"), based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters formed after an inquiry reasonable under the circumstances, assert the following in support of their claims and those of the putative class, against Defendants:

### INTRODUCTION

1. Defendant UnitedHealth Group Inc., through its wholly-owned subsidiaries including Defendants United HealthCare Services, Inc., United HealthCare Insurance Company, and United HealthCare Service LLC (collectively "United" or "Defendants"), is a fully integrated company that is in the business of insuring and administering health

insurance plans, most of which are employer-sponsored and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. ("United Plans").

2.     Under the terms of the United Plans, United is obligated to make benefit payments from its own assets (in the case of fully-insured United Plans) or the assets of the plan itself (in the case of self-insured United Plans) when someone insured by one of those plans (a "United Insured") obtains healthcare treatment that is covered by the terms of that plan (a "Covered Service").  With respect to all United Plans, however, United serves as the claims administrator, responsible for determining whether any given claim is covered by the plan and effectuating any resulting benefit payments.  Defendants are ERISA fiduciaries with respect to the United Plans.

3.     Plaintiffs bring this putative class action to redress Defendants' repeated violations of ERISA resulting from United's systematic failure to make benefit payments that are due and owing under United Plans.

4.     Dr. Peterson is a chiropractor based in New York City, doing business as "Peterson Chiropractic." Lutz is a general medical and surgical partnership of health care providers based in Lutz, Florida.  Both Dr. Peterson and Lutz regularly treat United Insureds.  However, neither Dr. Peterson nor Lutz has a direct contractual relationship with United.  They provide services to United Insureds on an out-of-network basis.

5.     Over the years, Plaintiffs have submitted thousands of claims to United for benefits owed under their patients' particular United Plans, United has adjudicated those claims, and United has caused those plans to pay Plaintiffs directly any benefits that United determined to be due and owing under the applicable United Plan terms.

6.      More recently, however, United has refused to pay Plaintiffs on numerous occasions for claims they submitted, even though United openly acknowledges that benefits were due and owing by the United Plan that covered the patient whose claim was at issue. Instead, United unilaterally withheld payment on these uncontroverted claims in order to satisfy a prior and disputed debt that United asserts Plaintiffs owe *different* United Plans, arising from benefits paid to Plaintiffs by *those* plans for *different* services Plaintiffs provided to *different* patients.

7.      These unilateral "offsets" or "recoupments," which reflect United's enterprise-level policy with respect to recovery of payments it believes were overpaid by any of the United Plans, violate the terms of the United Plans and ERISA.  There is no provision in any United Plan that permits United to withhold benefit payments owed to an out-of-network healthcare provider for services rendered to a United Insured simply because United unilaterally determines that the provider owes a debt to a different United Plan with respect to benefits previously paid by that plan for services rendered to a different United Insured.  United's actions also violate its fiduciary duties and other obligations under ERISA.

## THE PARTIES

8.      Plaintiff Louis J. Peterson, D.C. is a chiropractic physician who maintains a practice in New York City, New York.  He does not have a direct contractual relationship with United. He provides treatment to United Insureds on an out-of-network basis.

9.     Plaintiff Lutz Surgical Partners, PLLC is a health care provider group which maintains a practice in Lutz, Florida.  It does not have a direct contractual relationship with United. It provides treatment to United Insureds on an out-of-network basis.

10.     Defendant UnitedHealth Group Inc. is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota. It issues, administers, and makes benefit determinations related to ERISA health care plans around the country through its various wholly-owned and controlled subsidiaries, including Defendants United HealthCare Services, Inc., United HealthCare Service LLC, and United HealthCare Insurance Company.  Defendant UnitedHealth Group Inc. operates as, and owns the trademark to, "UnitedHealthcare."

11.     Defendant United HealthCare Services, Inc. is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota.  It is a wholly-owned and controlled subsidiary of Defendant UnitedHealth Group Inc.   Through and in combination with its state-level UnitedHealthCare subsidiaries/affiliates/agents, it issues and administers health care plans, including employer group health plans and employer ancillary and specialty benefits plans, which are governed by ERISA.

12.     Defendant United HealthCare Insurance Company is a wholly-owned subsidiary of Unimerica, Inc., which is wholly-owned and controlled by Defendant United HealthCare Services, Inc.  It is the underwriter of insurance provided by United HealthCare Services, Inc. and its state-level subsidiaries/affiliates.  It participates in the claims administration process related to United Plans insured or administered by such

subsidiaries/affiliates, and issues and administers other United Plans, most of which are governed by ERISA.

13.     Defendant United HealthCare Service LLC is a subsidiary of Defendant United HealthCare Insurance Company, and serves as its agent with respect to benefits claim adjudication.

14.     Defendants, other than UnitedHealth Group Inc., do not operate independently and in their own interests, but solely serve to fulfill the purpose, goals and policies of Defendant UnitedHealth Group Inc.

## JURISDICTION AND VENUE

15.     Plaintiffs assert subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

16.     Venue is appropriate in this District, and this Court has personal jurisdiction because Defendants UnitedHealth Group Inc. and United HealthCare Services, Inc. are headquartered here and the misconduct alleged herein arose out of policies Defendants' issued and implemented in this District.

## FACTUAL ALLEGATIONS

17.     The vast majority of United Insureds are covered by employee welfare benefit plans sponsored by private-sector employers.   Such plans are governed by ERISA.

18.     Providers who treat United Insureds are either "in-network" ("INET") or "out-of-network" ("ONET").   An INET provider is a provider who has entered into a contractual agreement with United and has agreed to accept specified rates for providing

services to United Insureds.  United's INET provider agreements also sometimes purport to authorize United to withhold payments otherwise due to an INET provider if United concludes that the provider was overpaid on a prior claim.

19.     Plaintiffs are ONET providers who routinely treat United Insureds and submit claims to United for benefit payments from each insured's United Plan.  United allows Plaintiffs to submit electronically all claims for services rendered to United Insureds to a single clearinghouse for benefit adjudication, regardless of the particular United affiliate/subsidiary that is formally designated as the "claims administrator" under the particular United Plan that insures the particular United Insured who received services from Plaintiffs.

20.     As ONET providers, Plaintiffs have no contract with United and have not entered into a United INET provider agreement.  In addition, Plaintiffs have never agreed, in writing or otherwise, that United may withhold payments otherwise owed by one United Plan in order to recover alleged prior overpayments made by another United Plan.

21.     United has never objected to Plaintiffs submitting claims to it on behalf of their United Insured patients.  United has always directly paid Plaintiffs any benefits that are owed by a particular United Plan for services rendered by Plaintiffs to a particular United Insured by sending Plaintiffs a check (drawn from the assets of such United Plan) along with a Provider Explanation of Benefits ("PEOB").  The PEOB does not identify the particular United affiliate/subsidiary which is the formally designated "claims

administrator" under the relevant United Plan, nor does it inform the provider whether such Plan is governed by ERISA.

22.     The PEOB explains United's adjudication of each claim submitted (*i.e.*, whether the claim was approved or denied) and the value of the corresponding covered benefit (which ordinarily corresponds to the value of the check made out to Plaintiffs). At the same time, United sends Plaintiffs' United Insured patient a corresponding Explanation of Benefits ("EOB"), which similarly explains how the claim was adjudicated and the value of the corresponding covered benefit that was paid to Plaintiffs. Both the PEOB and the EOB confirm United's acknowledgment that Plaintiffs, as the ONET providers who rendered health care services to particular United Insureds covered by particular United Plans, are the entities who are entitled to receive the benefit payments required by those United Plans.

23.     This arrangement serves the interests of both United Insureds and United.  It allows a United Insured to avoid having to pay ONET providers out-of-pocket for the full cost of treatment and await reimbursement from United.  It allows United to effectuate benefit payments owed by the United Plans more efficiently by paying the entity who provided, and is ultimately owed the money for providing, the medical service. Importantly, however, Plaintiffs' United Insured patients remain liable to Plaintiffs for any amounts billed by Plaintiffs that a patient's United Plans fails to pay. Plaintiffs have never agreed not to bill their United Insured patients for such unpaid amounts (*i.e.*, Plaintiffs have the right to "balance bill" their patients).

24.     Despite the obligation of the United Plans to make benefit payments for Covered Services provided by Plaintiffs to such plans' insureds, United is engaged in an enterprise-level scheme whereby it illegally withholds such payments.  It has done so in order to offset what it believes to be prior overpayments to Plaintiffs made by different United Plans relating to services provided to different United Insureds.  It has done so without any legal authority under the United Plans or otherwise, and leaves the United Insureds liable to Plaintiffs, since the bills for the underlying health care services were never paid, in whole or in part.

**Dr. Peterson**

25.     As a matter of course, Dr. Peterson's patients who are United Insureds (including but not limited to those insureds/patients whose claims were "offset" as described below) enter into agreements with Dr. Peterson in advance of receiving treatment pursuant to which they agree to remain liable for the full amount of the bill, while Dr. Peterson agrees first to seek payment from United, as their insurer.  As a result, Dr. Peterson has the contractual right to "balance" bill his United Insured patients for any amounts not paid by United.

26.     Additionally, many of Dr. Peterson's patients sign a form (the "Authorized Representative Designation") that includes the following statement:

> **Authorized Representative Designation**. I hereby designate, authorize, and convey to Provider to the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan: (1) the right and ability to act as my Authorized Representative in connection with any claim, right, or cause of action that I may have under such insurance policy and/or benefit plan, including but not limited to with respect to internal appeals or litigation; and (2) the right and ability to act as

my Authorized Representative to pursue such claim, right, or cause of action in connection with said insurance policy and/or benefit plan (including but not limited to, the right and ability to act as my Authorized Representative with respect to a benefit plan governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as provided in 29 C.F.R. §2560.5031(b)(4)), with respect to any healthcare expense incurred as a result of the services I received from Provider and, to the extent permissible under the law, to claim on my behalf, such benefits, claims, or reimbursement, and any other applicable remedy, including fines or injunctive relief.

27.     Over the past six years, Dr. Peterson has frequently received PEOBs from United in which United confirms Dr. Peterson's entitlement to thousands of dollars of benefit payments, but then explains that some or all of these amounts owed will not be paid because "THE AMOUNT PAYABLE FOR THIS EXPLANATION OF BENEFITS HAS BEEN USED TO REDUCE AN OVERPAYMENT MADE ON THE GIVEN CLAIM(S)."  Those "GIVEN CLAIMS" are claims filed by Dr. Peterson on behalf of different United Insureds who are insured by different United Plans.

28.     For example, on or about November 13, 2013, Dr. Peterson received a PEOB jointly sent by UnitedHealth Group Inc., United HealthCare Service LLC, and United HealthCare Services, Inc.[1] Among other things, the PEOB reflected claims for benefits for services provided by Dr. Peterson to five different United Insureds, on eight different days, and stated that the amount "payable" or "paid" to Dr. Peterson for these claims was collectively $3,593.31.  Each of these patients was insured by a United Plan governed by ERISA, and each executed Dr. Peterson's Authorized Representative

---

[1] To protect patient privacy, Plaintiffs are not attaching to this complaint a copy of the PEOBs or EOBs discussed herein. If necessary, Plaintiffs will provide copies of these documents to Defendants and the Court once an appropriate confidentiality order/protocol is in place.

Designation.  In processing the claims Dr. Peterson submitted on behalf of those patients, United confirmed in the PEOB that under the applicable United Plan: (a) the treatments he provided were Covered Services; and (b) the benefits identified were due and owing by such Plan. However, the last page of the PEOB indicated that the amount "paid" or "payable" to Dr. Peterson was not actually being paid – the payment was unilaterally withheld by United to satisfy a totally separate claim that United had regarding alleged prior overpayments made by different United Plans with respect to services Dr. Peterson provided months earlier to five different United Insureds.

29.    In addition to the PEOB that United sent to Dr. Peterson, it also sent an EOB to these five United Insured patients, in which it falsely reported that Dr. Peterson has been paid in full.  In fact, Dr. Peterson had not received any of the payments which United indicated in the PEOB were owed under those patients' United Plans.

30.    The November 13, 2013 PEOB is typical of numerous PEOBs that Dr. Peterson has received, which reflect that United has refused to pay benefits otherwise due and owing to him for Covered Services provided to United Insureds who were insured by United Plans governed by ERISA, many of whom executed his Authorized Representative Designation.  Like the November 13, 2013 PEOB, these other PEOBs explain that United unilaterally offset these benefit payments against alleged prior overpayments to Dr. Peterson for services provided to different United Insureds insured by different United Plans.

31.    Because Dr. Peterson never received payment for the services he provided to the United Insureds whose claims were "offset" by United to recover alleged prior

unrelated overpayments, those United Insureds remain liable to him for that amount, and he is entitled to balance bill those patients for his full bill.

**Lutz Surgical Partners**

32.     As a matter of course, Lutz's patients who are United Insureds (including but not limited to those insureds/patients whose claims were "offset" as described below) sign forms prior to receiving any medical treatment from Lutz pursuant to which they "authorize payment directly to" Lutz of any "surgical and/or medical benefits . . . otherwise payable to [the United Insured] for [Lutz's] services." These forms further confirm that Lutz's patients are fully liable for all billed charges and remain liable for any billed balance that is not paid by United. Thus, through these forms, Lutz has been designated by his United Insured patients as the party to which United is to pay the benefits under their United Plan.

33.     Over the past six years, Lutz received a number of PEOBs from United in which it confirms that Lutz is entitled to thousands of dollars of benefit payments pursuant to ERISA United Plans. United then explains that some or all of these amounts owed will not be paid because Lutz purportedly owes different United Plans for prior overpayments United made for claims filed by Lutz on behalf of different United Insureds.

34.     For example, on or about June 12, 2013, Lutz received a PEOB jointly sent by Defendants UnitedHealth Group Inc. and United HealthCare Service LLC. This PEOB reported that, on December 5, 2012, Lutz provided surgical services to a United Insured covered under a particular ERISA United Plan, and that Lutz's bill for such services was

$15,000.  Of that amount, United reported that $12,300.00 was "NOT COVERED," based on the following explanation which was included in an EOB sent to the United Insured:

> This physician or health care provider is not a network provider but has accepted a discount on this service in accordance with his or her Multiplan Agreement.  The member is responsible for the total amount indicated in the area of this statement showing what the patient owes.  You are not responsible for the difference between the amount charged and the amount allowed.  If you already paid the entire bill, please contact the physician or health care provider for a refund.

35.    After taking the Multiplan discount, United then reported that the "AMOUNT ALLOWED" was $2,700.00 and that the United Insured's Plan covered 100% of that total, such that the amount "PAID TO PROVIDER" was $2,700.00.  This sum was then reported as the "TOTAL PAYABLE TO PROVIDER."

36.    United, however, did not actually pay the $2,700.00 that it acknowledged was due and owing by the United Insured patient's ERISA United Plan.  Instead, United identified a different United Insured covered by a different United Plan who had been treated by Lutz on December 16, 2012.  According to the PEOB, United caused that United Plan to pay Lutz $19,460.00 for this treatment which was now characterized by United as the "ORIGINAL OVERPAYMENT AMOUNT." The PEOB then explained that the entire amount owed to Lutz for the services provided to the June 12, 2013  patient ($2,700.00) was being unilaterally offset against the prior alleged overpayment relating to the December 16, 2012 patient ($19,460.00), with the added explanation that "THIS REPRESENTS PREVIOUS BENEFITS THAT WERE PAID IN ERROR."  United therefore reported that the "TOTAL PAID TO THE PROVIDER" for services rendered

to the June 12, 2013 patient was $0.00.   In the "REMARKS" section of the PEOB, United stated:  "The amount payable for this Explanation of Benefits has been used to reduce an overpayment made on the given claim(s).  Please adjust your patient account balance accordingly."

37.    As an ONET provider, Lutz has never entered into an agreement with United which permits United to offset benefits owed by one United Plan for services provided to one of its United Insureds  in order to recover amounts United believes it erroneously caused a different United Plan to pay for services rendered to a different United Insured.  Lutz has no obligation to accept United's refusal to pay the new benefit and is not required to "adjust" its patient account.

38.    As with Dr. Peterson, in addition to the PEOB that United sent to Lutz, it also sent an EOB to the United Insured patients, in which United falsely reported that Lutz had been paid in full.

39.    As another example, on or about May 7, 2014, Lutz received a PEOB jointly sent by UnitedHealth Group Inc. and United HealthCare Services, Inc.  This PEOB identified a United Insured covered by a United Plan governed by ERISA. The patient was treated on January 3, 2014, for which Lutz billed $1,400.  The PEOB explained that the "AMOUNT ALLOWED" was only $71.73, however, due to application of a Medicare coordination of benefits provision in the insured's United Plan.  The PEOB further reported that although this claim could not be fully processed until Medicare's review was complete, $7.41 was nonetheless "PAID TO PROVIDER."

40.     The same PEOB identified a different United Insured who was insured by a different ERISA United Plan, who had received surgical services on January 27, 2014 for which Lutz billed a total of $21,900.00 for three separately identified services, each identified by a separate five-digit billing code.  The PEOB reported that the entire amount of this bill was covered under the insured's ERISA United Plan, such that $21,900.00 was identified as the "AMOUNT ALLOWED."  Then, after indicating that the United Plan covered 75% of two of the charges and 100% of the third, United reported that $19,850.00 was "PAID TO PROVIDER," with the remaining $2,050.00 the "PATIENT RESPONSIBILITY."

41.     The same PEOB also identified another United Insured covered under yet another ERISA United Plan.  This patient was treated by Lutz on January 3, 2014, for which Lutz billed $1,400.00.   This entire amount was reported by United as the "AMOUNT ALLOWED" under the ERISA United Plan, of which 75% was owed by United under the Plan.   Thus, the PEOB reported that $1,050.00 was "PAID TO PROVIDER," with the remaining $350.00 the "PATIENT RESPONSIBILITY."

42.     Combined, United reported in the May 7, 2014 PEOB that the "TOTAL PAYABLE TO PROVIDER" for all the identified services provided to these three United Insureds covered by three different ERISA United Plans was $20,907.41.

43.     However, despite the fact that United determined that Lutz was owed $20,907.41 under these three discrete ERISA United Plans for providing covered services to these three United Insureds, and the fact that the PEOB and EOB indicated that this

amount was "paid," United refused to pay these benefits to Lutz.  Instead, United reported the following information on the cover sheet of the PEOB:

| | |
|---|---|
| AMOUNT OF TOTAL BENEFITS AVAILABLE: | $20,907.41 |
| LESS AMOUNT PREVIOUSLY OWED: | $20,907.41 |
| TOTAL PAID: | $    0.00 |

44.     Thus, United paid no benefits to Lutz for providing the Covered Services because the entire amount was purportedly "previously owed."  This "previously owed" amount reflects United's belief that it had caused a different United Plan to overpay benefits to Lutz for services Lutz rendered to different United Insureds.

45.     In another PEOB dated May 21, 2014, jointly sent by UnitedHealth Group Inc. and United HealthCare Insurance Company, United reported that $2,800.00 was "PAYABLE TO PROVIDER" for services Lutz had provided in January 2014 and February 2014 to a patient insured by an ERISA United Plan.  This amount represented 100% of the charges billed by Lutz.  However, once again, these benefits were not actually paid to Lutz.  Instead, United reported in the PEOB that the entire amount was being withheld due to an alleged overpayment to Lutz related to a different United Insured covered by a different United Plan.  The identical explanation was used as in prior PEOBs, *i.e.*, that "the amount payable for this explanation of benefits has been used to reduce an overpayment made on the given claim(s)."  The check amount submitted to Lutz for this benefit claim was therefore $0.00.

46.     These PEOBs are typical of others that Lutz has received, which reflect that United has refused to pay benefits otherwise due and owing to Lutz for Covered Services

provided to United Insureds covered by United Plans governed by ERISA, solely because United unilaterally offset the amounts owed against alleged prior overpayments to Lutz for services provided to different United Insureds covered by different United Plans.

47.     Because Lutz never received payment for the services it provided to the United Insureds that were the subject of United's offsets, Lutz is entitled to balance bill those patients for its full bill and those United Insureds remain liable to Lutz for that amount.

## United's ERISA Violations

48.     The PEOBs summarized herein are typical of the numerous PEOBs that Plaintiffs have received.  Each of these PEOBs state that United has withheld benefit payments owed for services rendered to one United Insured patient covered by a specific United Plan (referred to herein as "Insured Bs") in order to recover funds that a different United Plan purportedly overpaid on claims submitted for services rendered to a different United Insured patient (referred to herein as "Insured As").  The vast majority of Insured Bs are insured by United Plans governed by ERISA.

49.     No United Plan permits United to deny or reduce benefits for one United Insured in order to recover overpayments a different United Plan purportedly made with respect to claims submitted on behalf of a different United Insured.  United's unilateral offsets violate the terms of the United Plans and impose financial liability on United Insureds for services that United itself acknowledges are covered by those insureds' United Plans.

50.     During all relevant times, and with specific respect to United's acts alleged herein, Defendants acted as ERISA fiduciaries with respect to their administration of the United Plans governed by ERISA.  In particular, the Defendants interpreted and applied Plan terms, made coverage and benefit decisions, and effectuated benefit payments. Under ERISA, Defendants were required, among other things, to make benefit determinations in accordance with the terms and conditions of those United Plans.

51.     United violated ERISA by failing to make payment for services that it acknowledged were Covered Services under the United Plans.  Under ERISA, the only lawful means of recovering a purported overpayment is through an action for equitable restitution, which requires establishing a constructive trust or equitable lien over the benefits.  Neither ERISA nor the United Plans permit United to do what it did here: unilaterally expropriate entirely different benefits owed under different United Plans from unrelated insureds and their ONET provider.  Such self-help is inconsistent with the United Plans and ERISA.

52.     In addition to violating the terms of the United Plans, United also failed to comply with the minimum requirements for "full and fair review" under ERISA and the regulations promulgated thereunder.  In particular, United's failure to send checks to Plaintiffs in the amounts owed under Insured Bs' United Plans governed by ERISA constituted an "adverse benefit determination" under ERISA that obligated United to provide the notice and appeal rights set forth in 29 C.F.R § 2560.503-1 ("ERISA Claims Procedure").  United, however, failed to treat its decision to unilaterally withhold payment as an adverse benefit determination, and did not provide ***any*** of the

informational items or appellate procedures mandated by the ERISA Claims Procedure.

For example, in the EOBs and PEOBs that United sent concerning offset claims, it failed

to identify the "plan provision" that supported its refusal to actually pay the covered

benefits; did not describe the applicable plan review procedures and time limits; did not

identify the rule or protocol that it relied upon or state that the rule or protocol would be

provided upon request; and did not provide any appeal rights – much less the type of

rights set forth in the ERISA regulations.  Indeed, by submitting the EOBs to the patients

which falsely stated that the benefits have been paid to Plaintiffs, United misled their

insureds into believing that there was no adverse benefit determination that could be

appealed.

53.    Because United failed to comply with the ERISA Claims Procedure, any

administrative remedies are "deemed" exhausted pursuant to 29 C.F.R § 2560.503-1(*l*).

Exhaustion is also excused because it would be futile to pursue administrative remedies,

as United does not acknowledge that offsets constitute benefit denials at all, and thus

offers no meaningful administrative process for challenging such offsets.

## **CLASS-RELATED ALLEGATIONS**

54.    Plaintiffs brings their claims on behalf of a class (the "Class") defined as:

All persons who sought a health insurance benefit payment from a United
health insurance plan governed by ERISA, for medical services rendered by
an ONET provider, if, during the time period running from two years prior
to the filing date of this action to its final termination, United withheld such
benefit payment in order to recover a prior alleged overpayment made to
the same ONET provider for medical services rendered to a different
patient insured by a different health insurance plan.

55.     The members of the Class are so numerous that joinder of all members is impractical.   While the precise number of members in the Class is known only to Defendants, upon information and belief, the Class consists of thousands of people.

56.     Common questions of law and fact that can be resolved with common answers exist as to all Class members and predominate over any questions affecting individual Class members.   Such common questions include:

(1)     Whether Defendants' offsets constitute "adverse benefit determinations" under ERISA;

(2)     Whether Defendants violated ERISA's notice and appeal requirements in connection with such offsets or otherwise provided an ERISA "full and fair review" of the claims that were not paid in order to effectuate such offsets;

(3)     Whether Defendants' offsets constitute a breach of the United Plans;

(4)     Whether Defendants were permitted to engage in recovery of purported overpayments without establishing the prerequisites for equitable restitution under ERISA;

(5)     Whether Defendants' standardized offset-related conduct establishes "deemed" exhaustion of administrative remedies;

(6)     Whether Defendants' standardized offset-related conduct establishes the futility of exhausting administrative remedies;

(7)     Whether Class members may recover unpaid benefits from Defendants and, if so, the amounts they should receive;

(8)     Whether, in addition to unpaid benefits, interest should be added to the payment of unpaid benefits under ERISA; and

(9)     Whether Plaintiffs are entitled to prospective relief enjoining Defendants' offset practices.

57.     Plaintiffs' claims are typical of the claims of the Class members.   Dr. Peterson is the authorized representative of his patients who are members of the Class;

Lutz is a member of the Class; there is no provision in any United Plan that allows United to withhold benefit payments otherwise due and owing with respect to services rendered to one United Insured in order to recover overpayments purportedly made by a different United Plan with respect to a different United Insured; no ONET provider has a direct contractual relationship with United; the prerequisites for equitable restitution under ERISA (constructive trust and/or equitable lien) are never met where United offsets payments owed to ONET providers; and United submits EOBs to all United Insureds whose benefit payments have been offset against purported overpayments to their ONET providers which falsely report that the benefits have been paid to the providers.

58.     Plaintiffs will fairly and adequately protect the interests of the members of the Class, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class action litigation and the prosecution of ERISA claims and have no interests antagonistic to, or in conflict with, those of the Class.

59.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendants.

60.     By routinely withholding benefits owed on account of Insured Bs to satisfy purported overpayments on the account of Insured As, Defendants have acted and refused to act on grounds that apply generally to the Class.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable.  Further, because the unpaid benefits denied Class members may be small

relative to the expense and burden of individual litigation, it would be impossible for the Class members to individually redress the harm done to them.

62.     Defendants maintain claims databases that record when and how they offset benefit payments in order to recover purported overpayments.  Accordingly, the members of the Class can be readily and objectively ascertained through use of records maintained by Defendants.

## COUNT I

### CLAIM FOR BENEFITS DUE
**(on behalf of Plaintiffs and the Class against all Defendants)**

63.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

64.     Count I is brought under 29 U.S.C. § 1132.

65.     United systematically violates (and violated) the terms of the United Plans and ERISA by failing to pay benefits for Covered Services in order to offset alleged overpayments on claims submitted on behalf of different United Insureds who are insured by different United Plans.

66.     United should be required to pay all such benefits.

## COUNT II

### CLAIM FOR INJUNCTIVE AND DECLARATORY RELIEF
**(on behalf of Plaintiffs and the Class against all Defendants)**

67.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

68.     Count II is brought under 29 U.S.C. § 1132.

69.     United systematically violates (and violated) its legal duties (fiduciary and otherwise) under ERISA by failing to pay benefits for Covered Services in order to offset alleged overpayments on claims submitted on behalf of different United Insureds who are insured by different United Plans.

70.     United should be enjoined from continuing to engage in this illegal conduct and such conduct should be declared illegal.

## COUNT III

### CLAIM FOR ERISA NOTICE AND APPEAL RIGHTS
**(on behalf of Plaintiffs and the Class against all Defendants)**

71.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

72.     Count III is brought under 29 U.S.C. § 1132.

73.     United's offsets constitute "adverse benefit determinations" under ERISA.

74.     When taking an offset, United was obligated to comply with ERISA's regulations governing adverse benefit determinations, which required United to acknowledge that the provider has not been "paid" for the newer claim, provide the reasons behind the adverse benefit determination, the plan terms that supported that reason, and the availability of an ERISA internal appeal.

75.     United failed to honor any of these legal obligations.  It should be required to do so and a declaration should be issued to this effect.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants as follows:

A.      Certifying the Class and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

B.      Declaring that Defendants violated ERISA and that offsets constitute "adverse benefit determinations" under ERISA;

C.      Ordering Defendants to make payment, with interest, of offset benefits;

D.      Ordering Defendants to disgorge the profits they earned by failing to pay offset benefits;

E.      Permanently enjoining Defendants from offsetting benefits owed on account of one United Insured covered by one United Plan in order to recover purported overpayments made by a different United Plan for services rendered to a different United Insured;

F.      Ordering Defendants to comply with ERISA's requirements concerning adverse benefit determinations when effectuating offsets;

G.      Awarding Plaintiff disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

H.      Granting such other and further relief as is just and proper.

Dated:  June 23, 2014                    Respectfully submitted,


                                         s/  Karen H. Riebel
                                         Richard A. Lockridge, #64117
                                         Karen Hanson Riebel, #219770
                                         Kate M. Baxter-Kauf, #392037
                                         LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                         100 Washington Avenue South
                                         Suite 2200
                                         Minneapolis, MN  55401-2159
                                         612.339.6900
                                         612.339.0981 (fax)


                                         D. Brian Hufford
                                         Jason S. Cowart
                                         ZUCKERMAN SPAEDER LLP
                                         1185 Avenue of the Americas
                                         31st Floor
                                         New York, NY  10036
                                         212.704.9600
                                         212.704.4256 (fax)


                                         William K. Meyer
                                         ZUCKERMAN SPAEDER LLP
                                         100 East Pratt Street, Suite 2440
                                         Baltimore MD 21202
                                         410.332.0444
                                         410.659.0436 (fax)


                                         Anthony F. Maul
                                         THE MAUL FIRM, P.C.
                                         68 Jay Street
                                         Suite 201
                                         Brooklyn, NY  11201
                                         646.263.5780
                                         866.488.7936 (fax)

Vincent N. Buttaci
John W. Leardi
Paul D. Werner
BUTTACI & LEARDI, LLC
103 Carnegie Center
Suite 323
Princeton, NJ  08540
609.799.5150
609.799.5180 (fax)

*Counsel for Plaintiffs and the Putative Class*