## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Louis J. Peterson, D.C., on behalf of Patients, E, I, K L, N, P, Q, and R, and on behalf of all others similarly situated, | Civ. No. 14-2101 (PJS/BRT) |
| Plaintiff, | |
| v. | |
| UnitedHealth Group Inc., United HealthCare Services, Inc., United HealthCare Insurance Company, United Healthcare Service LLC, | |
| Defendants. | |
| _____ | |
| Riverview Health Institute, on its own behalf and on behalf of all others similarly situated, | Civ. No. 15-3064 (PJS/BRT) |
| Plaintiff, | |
| v. | |
| UnitedHealth Group, Inc., United HealthCare Services, Inc., United HealthCare Insurance Company, Optum, Inc., | **ORDER** |
| Defendants. | |

These two cases are brought by Dr. Louis Peterson and Riverview Health Institute—two healthcare providers—on behalf of certain of their patients against UnitedHealth Group Inc. and various of its affiliates (collectively "United" or "Defendants"). United acts as the administrator for numerous health plans governed by

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 *et seq.*
According to Plaintiffs, United has wrongfully failed to pay them and other providers
who have treated patients enrolled in United-administered plans. Instead of paying the
providers what they are owed, Plaintiffs allege, United withholds some or all of their
payments in order to offset overpayments that United claims to have made to the
providers in connection with their treatment of different patients enrolled in different
plans. Plaintiffs allege that this practice—known as "cross-plan offsetting"—violates
ERISA and the terms of the plans.

This matter is before the Court on Plaintiffs' Motions for Leave to File Second
Amended Complaints (Civ. No. 14-2101, Doc. No. 193; Civ. No. 15-3064, Doc.
No. 132). Defendants consent to certain of the proposed amendments but not to others. In
particular, Defendants consent to amendments that add new at-issue offsets, "clean up"
existing allegations, amend the class definition in *Peterson*, and remove the class
allegations from *Riverview*. Defendants oppose the proposed amendments that bring new
causes of action, liability theories, and claims for relief; in particular, Defendants oppose
the addition of a claim for fiduciary breach under ERISA § 1132(a)(2) in *Peterson*, and
any related theories in both cases outside of those previously alleged for the purpose of
Plaintiffs' § 1132(a)(1)(B) claims. For those amendments that Defendants agree to, an
Amended Complaint may be filed in conformity with those agreed-upon proposed
amendments on or before **April 17, 2019**. This Order addresses the remaining proposed
amendments that are contested by Defendants. Those amendments include: in the
*Peterson* Complaint, paragraphs 6, 18, 21, 26, 30, 31, 33, 40, 49, 50, 51, 52, 55, 56, 57,

58, and Prayer for Relief sub-sections (B), (C), (F), and (H); in the *Riverview* Complaint, paragraphs 6, 39, 40, 42, 48, 51, 52, 53, 54, and Prayer for Relief sub-sections (A), and (B). The Court held a hearing on Plaintiffs' motions on March 27, 2019. (Civ. No. 14-2101, Doc. No. 206; Civ. No. 15-3064, Doc. No. 143.) As further stated below, Plaintiffs unduly delayed seeking the contested amendments, and the Defendants would be prejudiced if the amendments are allowed at this stage of the proceedings. Therefore, Plaintiffs' motions are denied.

## BACKGROUND

The following summary is provided as context for what Plaintiffs knew about the basis for a fiduciary-based cause of action and when they knew it, and to emphasize what Plaintiffs have communicated about what Phase I of this case was supposed to encompass. This background highlights Plaintiffs' undue delay in bringing a § 1132(a)(2) breach of fiduciary duty cause of action or alleging other related facts, theories, and requests for relief, and underscores why Defendants would be prejudiced by Plaintiffs adding such allegations and claims now.

### I.    Early Motions to Dismiss in *Peterson*

Plaintiffs filed their initial Complaint in the *Peterson* case almost five years ago on June 23, 2014, bringing three counts – (1) for benefits due under ERISA § 1132; (2) for injunctive and declaratory relief under ERISA § 1132; and (3) for notice and appeal rights under ERISA § 1132. In their fact section of that initial Complaint, Plaintiffs alleged that "Defendants are ERISA fiduciaries with respect to the United Plans," and stated that "United's actions also violate its fiduciary duties and other obligations under

ERISA" (Civ. No. 14-2101, Doc. No. 1, Compl. ¶¶ 2, 7), however, they asserted no

specific cause of action for breach of fiduciary duties pursuant to § 1132(a)(2).

Defendants moved to dismiss soon thereafter, and Plaintiffs filed a First Amended

Class Action Complaint as a matter of right pursuant to Federal Rule of Civil Procedure

15 on September 10, 2014. The First Amended Class Action Complaint dropped the third

count but retained the first two counts. Count I was amended to more specifically state a

claim for benefits due under ERISA § 1132(a)(1)(B) (hereinafter "the § 1132(a)(1)(B)

benefits cause of action"). Count II was amended to more specifically state a claim for

injunctive and declaratory relief under ERISA § 1132(a)(3) (hereinafter "the § 1132(a)(3)

injunctive and declaratory relief cause of action"). Plaintiffs retained factual allegations

regarding Defendants being fiduciaries who violated fiduciary duties similar to those

referenced above. (Civ. No. 14-2101, Doc. No. 33, Am. Compl. ¶ 2 ("Defendants are

ERISA fiduciaries with respect to all United Plans."); ¶ 6 ("These offsets violate the

terms of the United Plans, and United's application of this policy violates ERISA as well

as United's fiduciary duties as a claims administrator."); *see also* Am. Compl. ¶¶ 53–55,

58 (making allegations about United's duties as a fiduciary).) Again, Plaintiffs failed to

assert a separate cause of action for breach of fiduciary duties.

On October 8, 2014, Defendants moved to dismiss the First Amended Class

Action Complaint. (Civ. No. 14-2101, Doc. No. 39.) In addition to raising arguments

about standing and lack of requisite authorization, Defendants argued that Plaintiffs failed

to allege sufficient facts to plausibly establish an ERISA violation. Within their

argument, Defendants asserted that Plaintiffs' Complaint could be read as "purport[ing]

to assert that ERISA prohibits plans from reallocating overpayments through offsets *without regard to plan language*" (i.e., a per se violation), which they asserted failed as a matter of law. (Civ. No. 14-2101, Doc. No. 41, Mem. of Law in Supp. of Defs.' Mot to Dismiss at 22.) In their response, Plaintiffs argued among other things that if no plan language authorized cross-plan offsets, then Defendants' offset practice nonetheless violated ERISA, citing common law responsibilities of ERISA fiduciaries.[1] (Civ. No. 14-2101, Doc. No. 51, Pls.' Opp'n to Defs.' Mot. to Dismiss First Am. Compl. 11–12.) Still, no effort was made to assert a § 1132(a)(2) cause of action.

## II.   Introduction of Threshold Issues

At the hearing on Defendants' motion to dismiss, United States District Judge Patrick J. Schiltz inquired as to whether this case should proceed with identifying and deciding threshold issues:

> THE COURT:          . . . But, essentially, it seems to boil down to was there authority in the plan. You've heard me say it's just not something I'm going to take on in a Rule 12 motion.

---

[1]      Defendants also argued that Count I (Plaintiffs' § 1132(a)(1)(B) benefits cause of action) and Count II (Plaintiffs' § 1132(a)(3) injunctive and declaratory relief cause of action) should be condensed into one count under § 1132(a)(1)(B), since the relief sought under a § 1132(a)(3) claim would be available under § 1132(a)(1)(B), and because § 1132(a)(3) only applies when no other provision under ERISA could allow the relief sought by Plaintiffs. (Case No. 14-2101, Doc. No. 41 at 28.) Plaintiffs responded that Count II was brought under § 1132(a)(3) in case remedies were not available under § 1132(a)(1)(B), and that they were allowed to bring alternative theories at the motion to dismiss stage. (Civ. No. 14-2101, Doc. No. 51 at 17–18.) These two causes of action, therefore, have been tied together since the inception of the *Peterson* lawsuit, which cuts against Plaintiffs' argument now that liability on the § 1132(a)(3) injunctive and declaratory relief cause of action was reserved for a later phase in the case.

Is there any reason that we could not do the kind of staged discovery that I suggest, which is you identify the threshold issues; we have a limited discovery on those; we bring those here; if you survive that, then we go into the much more complicated issues of liability and damage?[2]

MR. COWART:[3]  No, Your Honor. I think that would be fine with us.

THE COURT:    Okay. I'd like you to try to . . . But let's try to actually discover everything that's involved in this case. Could be a pretty long, expensive discovery, but let's try to identify threshold issues, get those teed up as quickly as we can. I'll have you back here. We'll take care of those. If there's still a case, we'll turn to the next phase.

MR. COWART:    That sounds reasonable, Your Honor.

(Civ. No. 14-2101, Doc. No. 60 at 43–44.)

On January 23, 2015, Judge Schiltz granted Defendants' motion in part,

dismissing two of the three original named Plaintiffs for lack of standing, but finding that

Dr. Peterson had standing to proceed. (Civ. No. 14-2101, Doc. No. 56.) Defendants

---

[2]    More than two years after this hearing, after Phase I issues were framed and presented to the Court, Judge Schiltz ruled in favor of Plaintiffs on liability as to the counts before him (*i.e.*, Counts I and II), which was consistent with what Plaintiffs sought. (*See* Case No. 14-2101, Doc. No. 142 at 35; Case No. 15-3064, Doc. No. 89 at 35 ("This Court should therefore find United liable under Counts I and II."); Case No. 14-2101, Doc. No. 142 at 36; Case No. 15-3064, Doc. No. 89 at 36 ("This Court should grant Plaintiffs' Motion for Summary Judgment, deny United's cross-motion, and find that United's cross-plan offsets violate United's plans and ERISA."); Civ. No. 14-2101, Doc. No. 97, Pl's Reply Mem. in Supp. of Cross-Mot. for Summ. J. on Phase 1 Issues ("Pl's Reply on SJ #1") 15 (requesting the Court to grant his motion "for Partial Summary Judgement on Liability"); Case No. 14-2101, Doc. No. 184, 1/15/19 Decision by Eighth Circuit at 3 (referencing that the district court "entered partial summary judgment to the plaintiffs on the issue of liability").) Plaintiffs' current position that liability on Count II was not addressed (leaving an opportunity to add new causes of action) conflicts with their past positions and the record.

[3]    Mr. Cowart is counsel for Plaintiffs in both the *Peterson* and the *Riverview* cases.

answered the Amended Complaint on February 2, 2015. (Civ. No. 14-2101, Doc. No. 61.) The undersigned held a Pretrial Scheduling Conference on March 30, 2015, after the parties had submitted their Joint Rule 26(f) Report. (Civ. No. 14-2101, Doc. Nos. 63, 64.) In the Joint Rule 26(f) Report, Plaintiff stated that "[t]he only disputed factual issue is whether United Plans permit the offset policy, and that issue can be resolved through review of relevant Plan documents." (Civ. No. 14-2101, Doc. No. 63 at 4.) In their Report, the parties agreed "on the (a) scope of the threshold issues which will be the subject of the first phase of this staged discovery, and (b) a plan and schedule for conducting that discovery." (Civ. No. 14-2101, Doc. No. 63 at 6.) They also agreed "that the focus of this first phase of staged discovery would be on identifying representative Plans and patients of Dr. Peterson covered by those representative Plans, and testing Dr. Peterson's authorization (and hence derivative standing) to bring those claims." (*Id.*) The parties then composed the agreed-upon threshold issues:

1. **Agreed threshold issues:**

    a. Whether, as Plaintiff contends, plan language in "representative" United Plans did not authorize United's cross-plan offsets, which Plaintiff contends renders the cross-plan offsets illegal; or whether, as United contends, plan language in "representative" United Plans supports United's defense that those United Plans expressly or impliedly authorized cross-plan offsets. In support of this defense, United relies on the legal standard set forth in *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725 (5th Cir. 2010). Tr. 27, 28; 51.

    b. Whether Dr. Peterson's standing in this action is supported by authorized representative forms signed by patients who have authorized—and continue to authorize—Dr. Peterson's bringing the claims in this action on their behalf, notwithstanding Defendants' assertion of a conflict of interest. Tr. 27-28; 51.

(Doc. No. 63 at 6.)[4]

A Pretrial Scheduling Order issued in April 2015.[5] (Case No. 14-2101; Doc. No. 65.) The Scheduling Order allowed for two months of discovery, and set a dispositive motion heard-by date on the threshold issues for September 30, 2015. In a status report to the Court on April 27, 2015, Plaintiff represented that he did not anticipate adding additional parties and made no mention of needing to add additional claims or causes of action. (Case No. 14-2101; Doc. No. 66.) On June 19, 2015, the parties then stipulated to Plaintiff filing a Second Amended Complaint, which dropped several patients on whose behalf Dr. Peterson had sued but retaining the same two counts from their previous Complaint – a § 1132(a)(1)(B) benefits cause of action and a § 1132(a)(3) injunctive and declaratory relief cause of action. (Case No. 14-2101; Doc.

---

[4]    The parties requested a date by which to add/amend parties but did not request a more general deadline for amending pleadings (*id.* at 7), which is consistent with Judge Schiltz's prior ruling that two of the Plaintiffs were dismissed from the case "without prejudice" and his statements regarding teeing up threshold issues that either would end the case or lead the Court to questions on liability and damages.

[5]    This Scheduling Order ultimately governed both the *Peterson* and *Riverview* cases for "Phase I" discovery once the *Riverview* case was filed. Accordingly, Plaintiffs' motions to amend could be analyzed under Federal Rule of Civil Procedure 16. *See In re Gen. Elec. Co. Sec. Litig.*, No. 09 Civ. 1951 DLC, 2012 WL 2892376, at *4–6 (S.D.N.Y July 12, 2012) (analyzing motion to amend under Fed. R. Civ. P. 16, even when the scheduling order did not set any schedule for submission of an additional amended complaint). Because this Court denies Plaintiffs' motions to amend under the more liberal Rule 15 standard, it need not address whether Plaintiffs met the Rule 16 good cause standard. The Court notes, however, that it would find Plaintiffs have not provided good cause to amend the schedule to allow for their proposed amendments. And, the Court notes that Plaintiff's proposed amendments in *Riverview* violate the most recent scheduling order as the proposed amendments are beyond the scope of those allowed. (Case No. 15-3064, Doc. No. 130 at 3.)

No. 74, Stipulation, approved by the Court at Doc. No. 76; *see also* Doc. No. 77, Second Am. Compl.)

### III. Complaint Filed in *Riverview* Included a § 1132(a)(2) Fiduciary Breach Cause of Action

One month later, on July 15, 2015, Plaintiff filed its initial Complaint in the *Riverview* case, bringing three counts: (1) for benefits due under ERISA § 1132(a)(1)(B) (hereinafter "the § 1132(a)(1)(B) benefits cause of action"); (2) for injunctive and declaratory relief under ERISA § 1132(a)(3) (hereinafter "the § 1132(a)(3) injunctive and declaratory relief cause of action"); and (3) for fiduciary breach under ERISA §§ 1132(a)(2) and 1109 (hereinafter "the § 1132(a)(2) fiduciary breach cause of action). (Civ. No. 15-3064, Doc. No. 1.) The *Riverview* case was then reassigned to United States District Judge Schiltz and the undersigned as a related case with *Peterson*. (Civ. No. 15-3064, Doc. No. 12.) The Court extended the deadline for answering the Complaint to September 21, 2015, and on that date, Defendants filed a motion to dismiss. (Civ. No. 15-3064, Doc. Nos. 21, 26.) After Defendants moved to dismiss, Plaintiff voluntarily dismissed its § 1132(a)(2) fiduciary breach cause of action.[6] (Civ. No. 15-3064, Doc. No. 36.) Plaintiff did not seek to add the § 1132(a)(2) fiduciary breach cause of action in the *Peterson* case at that time.

---

[6] Therefore, it was reasonable for Defendants to believe that any § 1132(a)(2) fiduciary breach cause of action would not be asserted in either case and they could prepare their cases accordingly.

## IV. First Motion for Summary Judgment in the *Peterson* case

In August 2015, the parties filed cross-motions for summary judgment in the *Peterson* case, which were heard by Judge Schiltz on September 30, 2015. (Civ. No. 14-2101, Doc. Nos. 83, 89.) In Plaintiff's motion, he argued that United's interpretation of the plan terms was not "reasonable" under the *Finley* test,[7] "especially because United's boundless discretionary theory violates a fiduciary's duty of loyalty to administer an ERISA plan 'with an eye single to the interests of the participants and beneficiaries.'" (Civ. No. 14-2101, Doc. No. 91, Pl's Mem. in Supp. of Cross-Mot. for Summ. J. on Phase 1 Issues ("Pl's Mem. on SJ #1") 2 (citation omitted); *see also id.* at 2–3 (citing case for the proposition that blurring lines between separate plans constitutes a breach of fiduciary duties).) Plaintiff made the argument that "this case is about the rule of law and whether United can do what it wants, when it wants, without regard to plan terms, trust law principles, the *Finley* factors, or other restraints on a fiduciary's powers. (*Id.* at 3–4.) Among other arguments under *Finley*, Plaintiff argued that the *Finley* factor considering "conflicts with the substantive or procedural requirements of the ERISA statute" weighed

---

[7]     The *Finley* test, used in reviewing administrators' plan interpretations, includes consideration of the following factors:

> whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language in the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

*Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992).

in his favor "[e]ven on the limited Phase I record." (*Id.* at 16.) Plaintiff argued that it was "clear that United's interpretation of unidentified Exemplar Plan terms as permitting cross-plan offsets conflicts with fundamental principles of ERISA and the common law of trusts upon which ERISA is based," and that "[p]aramount is the duty of loyalty." (*Id.*) Plaintiff cited not only to 28 U.S.C. § 1104(a), which states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," but also cited to duties that exist at common law.[8] (*Id.*)

On October 1, 2015, Judge Schiltz issued an order denying both parties' cross motions. (Civ. No. 14-2101, Doc. No. 101.) Judge Schiltz focused his order in particular on one *Finley* factor, stating that "[o]ne of the *Finley* factors that the Court must consider is whether United's interpretation of the plans conflicts with the substantive or procedural requirements of ERISA." (*Id.* at 2.) Judge Schiltz stated:

> At oral argument, United argued that fiduciaries of the plans have directed United to engage in cross-plan offsetting, and that these directives should remove any concern that United's use of cross-plan offsets may conflict with ERISA. Evidence regarding these directives is not in the record, however, and (because United did not clearly raise this argument until oral argument) the parties have not briefed how the existence of such evidence might affect the analysis under *Finley*.

---

[8]     Plaintiff argued breach of loyalty at length in this summary-judgment briefing. This includes in his Reply brief where he disputes United's contention that he did not plead breach of ERISA's duty of loyalty. Plaintiff then cites to some paragraphs from his Second Amended Complaint where he contends that he alleged breach of fiduciary duties. (Civ. No. 14-2101, Doc. No. 97, Pl's Reply on SJ #1 at 5, n.2.) If he was able to make such an extensive argument about breach of loyalties based on the Phase I discovery addressing this *Finley* factor, there is no good reason why Plaintiff could not have sought to amend his Complaint then to add a § 1132(a)(2) fiduciary breach cause of action, or other further factual allegations at that time. This was over three and a half years ago.

. . .

In short, both parties have raised issues that might very well affect the Court's analysis of the *Finley* factors, thereby raising the specter of the Court having to do the analysis twice – once now and once after additional discovery and briefing. The Court would prefer to conduct only one *Finley* analysis based on all of the evidence that reasonably relates to that analysis.[9]

(*Id.* at 2.) Therefore, Judge Schiltz denied the parties' motions without prejudice and

directed them to meet with the undersigned to "develop a plan for discovery of additional

evidence relevant to the Finley factors," and "propose a plan for bringing and briefing a

new round of summary-judgment motions following that discovery." (*Id.* at 3.)

## V. Period after First Round of Summary-Judgment Motions

In the months that followed Judge Schiltz's order, the undersigned held several

status conferences with the parties. (Doc. No. 102, Minute Entry for 10/15/15 status

conference; Doc. No. 105, Minute Entry for 10/29/15 status conference; Doc. No. 108,

Minute Entry for 11/5/15 status conference.) Also, in the *Riverview* case, on November

20, 2015, the parties stipulated to Plaintiff filing an Amended Complaint. (Case. No. 15-

3064, Doc. No. 45.) On November 25, 2015, the undersigned issued a Consolidated

Amended Order Regarding Phase I Proceedings, which allowed for Riverview to file the

proposed Amended Complaint, and which also addressed discovery and motions for

---

9       At the March 2019 hearing before the undersigned, Plaintiffs conceded that the facts that would support a § 1132(a)(2) fiduciary breach cause of action would overlap with the facts that would support this *Finley* factor. After learning that Judge Schiltz only wanted to do an analysis once that related to breach of fiduciary duties, Plaintiffs should have sought leave to amend to add any additional fiduciary duty allegations or cause of action no later than immediately following Judge Schiltz's October 1, 2015 Order.

Phase I. (Case No. 14-2101, Doc. No. 109; Case No. 15-3064, Doc. No. 48.) The undersigned also set a new briefing schedule for new motions for summary judgment. (Case No. 14-2101, Doc. No. 109 at 7–8; Case No. 15-3064, Doc. No. 48 at 7–8.)

On December 30, 2015, Judge Schiltz denied Defendants' pending motion to dismiss in the *Riverview* case, holding that the anti-assignment provisions in the plans administered by United did not prohibit the patients from assigning their causes of action to Riverview. (Civ. No. 15-3064, Doc. No. 52.) Riverview filed its Amended Complaint on January 29, 2016, which again left the § 1132(a)(2) fiduciary breach cause of action out. (Case No. 15-3064, Doc. No. 57, Am. Compl.)

## VI. Second Round of Summary-Judgment Motions for Phase I – *Peterson* and *Riverview*

Plaintiffs filed their memorandum for summary judgment on Phase I issues on April 8, 2016. (Case No. 14-2101, Doc. No. 140; Case No. 15-3064, Doc. No. 87.) Although Plaintiffs began their brief stating that "[a]dditional Phase I discovery ordered by the Court to enable it to conduct a *Finley*-based analysis has revealed breathtaking levels of duplicity and self-dealing by United that reinforces the need for entry of summary judgment in Plaintiffs' favor," Plaintiffs made no mention of the potential for a separate fiduciary breach cause of action to be brought in the future. (Case No. 14-2101, Doc. No. 142 at 1; Case No. 15-3064, Doc. No. 89 at 1; *see also* Case No. 14-2101, Doc. No. 142 at 20–24; Case No. 15-3064, Doc. No. 89 at 20–24 (making *Finley* factor analysis and referencing the common law duties; Case No. 14-2101, Doc. No. 142 at 32–34; Case No. 15-3064, Doc. No. 89 at 32–34 (making additional arguments with respect

to United's fiduciary duties).) And, in direct contrast to Plaintiffs' present view that Phase I was to address a narrow set of issues regarding Count I with more litigation to come on other causes of action, Plaintiffs argued the opposite:

> United repeatedly claims that the scope of Phase 1 summary judgment is extremely limited, and that it is free to raise future arguments for why cross-plan offsets are lawful . . . . But this Court made clear that it viewed Phase 1 Rule 56 motions as "dispositive motions" on "threshold issues" of the legality of cross-plan offsets.

(Case No. 14-2101, Doc. No. 142 at 4, n.4; Case No. 15-3064, Doc. No. 89 at 4, n.4.) Plaintiffs now argue that they should be allowed to add additional allegations, a new cause of action, and requests for relief, when their position during the second round of summary-judgment motions was that class certification discovery would be the next step following a favorable ruling.[10] (Case No. 14-2101, Doc. No. 159, Pls.' Reply Mem. 18; Case No. 15-3064, Doc. No. 106, Pls.' Reply Mem. 18 (requesting the Court to "grant Plaintiffs' Renewed Motion for Partial Summary Judgment on Liability" and to "direct the parties to commence class certification discovery").)

On March 14, 2017, Judge Schiltz issued his order on the cross-motions for summary judgment, granting Plaintiffs' motions. (Case No. 14-2101, Doc. No. 169,

---

[10]    Again, Plaintiffs' current argument that liability on their § 1132(a)(3) injunctive and declaratory relief cause of action was reserved for a later phase is contrary to the positions Plaintiffs took previously, as they specifically requested the Court to rule on liability for both Counts I and II of their Complaint. (Case No. 14-2101, Doc. No. 142 at 35; Case No. 15-3064, Doc. No. 89 at 35 ("This Court should therefore find United liable under Counts I and II."); Case No. 14-2101, Doc. No. 142 at 36; Case No. 15-3064, Doc. No. 89 at 36 ("This Court should grant Plaintiffs' Motion for Summary Judgment, deny United's cross-motion, and find that United's cross-plan offsets violate United's plans *and ERISA*." (emphasis added).)

3/14/17 Order 36; Case No. 15-3064, Doc. No. 111, 3/14/17 Order 36.)  In the order, the

Court addressed the fiduciary duties imposed by ERISA and the *Finley* factor that

considers conflicts with the substantive or procedural requirements of the ERISA statute.

(Case No. 14-2101, Doc. No. 169, 3/14/17 Order 19–34; Case No. 15-3064, Doc.

No. 111, 3/14/17 Order 19–34.) At one point, the Court stated the following:

> In light of this case law and the strict fiduciary duties imposed by ERISA,
> cross-plan offsetting is, to put it mildly, a troubling use of plan assets—one
> that is plainly in tension with "the substantive or procedural requirements
> of the ERISA statute . . . ." *Finley*, 957 F.2d at 621. In stark terms, cross-
> plan offsetting involves using assets from one plan to satisfy debt allegedly
> owed to a separate plan – a practice that raises obvious concerns under
> §§ 1104 and 1106. These concerns are particularly acute in this case, in
> which every offset that United orchestrated did not just benefit a different
> unrelated plan, but benefited United itself.

(Case No. 14-2101, Doc. No. 169, 3/14/17 Order 21; Case No. 15-3064, Doc. No. 111,

3/14/17 Order 21; *see also id.* at 29 (stating that "cross-plan offsetting raises serious

concerns under ERISA"), 33 (stating that "cross-plan offsetting is in tension with

ERISA's fiduciary rules")).) The Court certified the order for immediate appeal, finding

that "an immediate appeal from the order may materially advance the ultimate

termination of the litigation." (*Id.* at 34.) At no time prior to this point had either case

been stayed. And at no time prior to this point or immediately following this order did

Plaintiffs bring a motion to amend to add a § 1132(a)(2) fiduciary breach cause of action.

Defendants filed an application to proceed with an interlocutory appeal and the

United States Court of Appeals for the Eighth Circuit granted the application. On April 6,

2017, this Court then stayed both the *Peterson* and *Riverview* cases pending the outcome

of that appeal. (Case No. 14-2101, Doc. No. 170; Case No. 15-3064, Doc. No. 112.) The

cases remained stayed for almost two years. On January 15, 2019, the Eighth Circuit affirmed the Court's ruling on summary judgment.[11] (Case No. 14-2101, Doc. No. 184.)

## VII. Post-Appeal

The undersigned held a status conference with counsel for all parties on January 29, 2019. (Case No. 14-2101, Doc. No. 189; Case No. 15-3064, Doc. No. 129.) No mention was made at that time that Plaintiffs would be seeking to amend the Complaint to add new counts. The parties were directed to meet and confer and informally submit a proposed plan and schedule for the two cases to the undersigned by February 12, 2019. The parties jointly submitted their proposals on February 12, 2019. The parties agreed that the *Riverview* case would proceed as an individual case and the *Peterson* case would proceed as a proposed class action case. It was represented to the undersigned regarding *Riverview* that –

> [t]he parties believe that they can address all remaining issues in the case, including new offsets identified by Riverview, new plan-based defenses Defendants may have with respect to those offsets, and Defendants' state law and common law defenses, in a relatively brief discovery period. Then, the parties contemplate proceeding to cross-motions for summary judgment to address all outstanding issues relating to facts, law, and remedies.

(Case No. 15-3064, Doc. No. 148-1, 2/12/19 informal letter submission.) It was represented to the undersigned regarding *Peterson* that –

---

[11]     Similar to Judge Schiltz, the Eighth Circuit stated that "the practice of cross-plan offsetting is in some tension with the requirements of ERISA. While we need not decide here whether cross-plan offsetting necessarily violates ERISA, at the very least it approaches the line of what is permissible." (Case No. 14-2101, Doc. No. 184, Eighth Circuit Decision 10.)

Defendants intend to file a narrow motion to strike the class allegations based on the Court's prior rulings dismissing two named plaintiffs from the case. After resolution of that motion, the parties agree there should be a six-month class discovery period, followed by briefing on Plaintiff's motion for class certification.

(Case No. 15-3064, Doc. No. 148-1, 2/12/19 informal letter submission.)[12]

Based on the input of counsel and the needs of each of the cases, the undersigned issued separate scheduling orders in the two cases. In *Peterson*, allowing for either the filing of a stipulated Third Amended Complaint or a motion seeking leave to amend (because Plaintiff was seeking to proceed as a proposed class action) by February 28, 2019, acknowledging that Defendants might bring a motion to strike the class allegations, and setting a status conference for March 5, 2019, and a discovery conference for April 17, 2019. (Case No. 14-2101, Doc. Nos. 190, 192.) In *Riverview*, setting a schedule for the case that comported with Plaintiff's representation that "there are relatively few issues remaining to reach a final judgment on the merits," and the parties' belief "that they can

---

[12]    It is apparent through this joint letter submission by the parties, that Plaintiffs were in agreement that Defendants' state law and common law defenses might be addressed following the finding of liability on the current counts. This Court makes no finding and takes no position as to what defenses may or may not apply following Judge Schiltz's ruling. However, at least Defendants' flagged the potential for such litigation following Phase I; Plaintiffs did not flag to the Court or Defendants that they would be seeking proposed amendments that included new causes or action and claims for relief. (*See* Case No. 14-2101, Doc. No. 124, Defs.' Mem. of Law in Supp. of Defs.' Mot for Summ J. 12, n.8; Case No. 15-3064, Doc. No. 71, Defs.' Mem. of Law in Supp. of Defs.' Mot for Summ J. 12, n.8 ("*United continues* to reserve all rights and defenses that go beyond the scope of Phase I discovery, including without limitation any objections or defenses it may have to the propriety of class certification, any rights or defenses it may have based on common law or state laws, and any defenses it may have to the claims of particular plaintiffs (such as whether a particular plan is actually governed by ERISA).") (emphasis added).)

address all remaining issues in the case, including new offsets identified by Riverview, new plan-based defenses Defendants may have with respect to those offsets, and Defendants' state law and common law defenses, in a relatively brief discovery period." (Case No. 15-3064, Doc. No. 130.) The undersigned set February 28, 2019, as the date by which amended pleadings must be filed and served. In doing so, the Court noted: "The parties agreed on the following: Plaintiff must 'file a stipulation or motion for leave to amend to identify new offsets and remove class allegations.'" (*Id.*)

On February 28, 2019, Plaintiffs filed the present motions to amend. As stated above, in *Peterson*, the Second Amended Complaint (the operative Complaint) asserts two counts – a § 1132(a)(1)(B) benefits cause of action and a § 1132(a)(3) injunctive and declaratory relief cause of action. Plaintiff now seeks to add a § 1132(a)(2) fiduciary breach cause of action,[13] to assert his § 1132(a)(3) injunctive and declaratory relief cause of action as two counts – one under § 1132(a)(3)(A) and one under § 1132(a)(3)(B),[14] to

---

[13]    Again, this § 1132(a)(2) fiduciary breach cause of action was previously dropped from the *Riverview* Complaint in the Fall of 2015. (Case No. 15-3064; Doc. No. 36.)

[14]    Plaintiff proposes an amendment that would seek injunctive and declaratory relief under § 1132(a)(3)(A), which, according to Plaintiff, allows for Plaintiff and the Class to "enjoin any act or practice which violates any applicable provision of ERISA or the terms of United Plans." (Case No. 14-2101, Doc. No. 193-1 at ¶ 54.) Plaintiff proposes amending a supporting allegation for this cause of action as follows:

> United systematically violates (and violated) the terms of the
> United Plans and ~~ERISA~~ /or ERISA, including breaching its fiduciary
> duties under ERISA, by failing to cause those ~~plans~~Plans to pay benefits for
> Covered Services, or by taking benefits that were issued by such Plans
> rather than paying the ONET providers of the United Insureds, in order to
> offset alleged overpayments that United caused ~~those plans~~other United

(Footnote Continued on Next Page)

add additional factual and supporting allegations, and to add requests for relief.[15] In *Riverview*, the First Amended Complaint (the operative Complaint) also asserts two counts – a § 1132(a)(1)(B) benefits cause of action and a § 1132(a)(3) injunctive and declaratory relief cause of action. Plaintiff does not seek to add a § 1132(a)(2) fiduciary breach cause of action, but does seek to assert its § 1132(a)(3) injunctive and declaratory relief cause of action as two counts – one under § 1132(a)(3)(A) and one under

---

(Footnote Continued From Previous Page)
Plans to make on claims submitted with respect to different United Insureds.

(Case No. 14-2101, Doc. No. 193-1 at ¶ 55.)

Plaintiff also proposes an amendment that would seek other equitable relief under § 1132(a)(3)(B) in a separate count, which, according to Plaintiff, allows Plaintiff and the Class to "obtain other appropriate equitable relief under ERISA (i) to redress violations of ERISA or the terms of the United Plans or (ii) to enforce any provisions of ERISA of the terms of the United Plans." (Case No. 14-2101, Doc. No. 193-1 at ¶ 57.) Plaintiff proposes adding a new supporting allegation for this cause of action as follows:

United systematically violates (and violated) the terms of the United Plans and ERISA, including breaching its fiduciary duties under ERISA, by failing to cause those Plans to pay benefits for Covered Services, or by taking benefits that were issued by such Plans rather than paying the ONET providers of the United Insureds, in order to offset alleged overpayments that United caused other United Plans to make on claims submitted with respect to different United Insureds.

(Case No. 14-2101, Doc. No. 193-1 at ¶ 58.)

[15]    Plaintiff also seeks to make other amendments, which as referenced above are not contested and therefore are not mentioned here.

§ 1132(a)(3)(B),[16] to add additional factual and supporting allegations, and to add requests for relief.

Defendants argue that the motions should be denied, both because Plaintiffs have previously disavowed any claim based on a per se violation of ERISA and represented that they were pursuing only plan-language based theories of liability,[17] and because they have unduly delayed in seeking the amendments and the amendments would be prejudicial to Defendants. Plaintiffs respond asserting that they have not disavowed claims of fiduciary breach because their § 1132(a)(1)(B) benefits causes of action and § 1132(a)(3) injunctive and declaratory relief causes of action have both relied upon already-asserted factual allegations regarding fiduciary duties – the former by way of the

---

[16]    Plaintiff's proposed amendments for the § 1132(a)(3)(A) and § 1132(a)(3)(B) causes of action are virtually identical to the proposed amendments for the § 1132(a)(3)(A) and § 1132(a)(3)(B) causes of action in the *Peterson* case. *See supra* n. 14; (Case No. 15-3064, Doc. No. 132-1 at ¶¶ 50–51, 53–54).

[17]    Defendants point to various exchanges in the record where Plaintiffs have appeared to limit their theories of liability to those linked to plan language only. (*See* Civ. No. 14-2101, Doc. No. 104, 9/30/15 Mot. Hr'g Tr., at 49:22-25 (citing that when asked by Judge Schiltz at the first summary-judgment hearing whether a fiduciary per se violates ERISA by allowing plans to engage in cross-plan offsetting, Plaintiffs responded, "So no is the short answer. The longer answer is our position is not that it is inherently a violation of the duty of loyalty or the ban on prohibited transactions to engage in cross-plan offsets"); *see also* Civ. No. 14-2101, Doc. No. 168, 8/24/16 Mot. Hr'g Tr., at 21:17-22:6 (confirming to Judge Schiltz that "cross-plan offsetting in and of itself does not violate ERISA"), and at 53:8-16 ("THE COURT: But you've told me that cross-plan offsetting doesn't in and of itself violate ERISA, that it's possible for fiduciaries to engage in cross-plan offsetting without violating ERISA. MR. COWART: I hope I've been clear. Our position is that in this litigation we're not saying that there is a categorical ban against cross-plan offsetting. We don't think we need to go there because we think that there is no plan language in there.").) At no time during these exchanges did Plaintiffs flag the potential of a new fiduciary breach cause of action.

*Finley* analysis, and the latter because it encompasses ERISA "violations." Plaintiffs also assert that "[t]he contested amendments adding a new claim under § 1132(a)(2) in *Peterson* do nothing more than provide another form of relief to remedy the already alleged breaches." (Doc. No. 203 at 2.)

## II.    Analysis

Although Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires," amendment is not an absolute right, as "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment may be grounds to deny [the] motion." *Doe v. Cassel*, 403 F.3d 986, 991 (8th Cir. 2005) (quotations omitted). "Delay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown." *Id.* (quoting *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004)).

This Court need not reach the question of whether Plaintiffs previously disavowed the claims that they are now seeking to add to the Complaints because the Court denies Plaintiffs' motions based on undue delay and prejudice to Defendants.

### A.    Plaintiffs Unduly Delayed in Seeking to Amend

Plaintiffs' primary argument is that they are "fully justified in amending the complaints to account for the evidence uncovered during Phase I and the interpretation of ERISA that DOL offered as amicus curiae in the Eighth Circuit." (Doc. No. 203 at 6.) First, Plaintiffs' contention that the amicus curiae submission before the Eighth Circuit shed light on something new is perplexing. The argument that the amicus curiae raised

regarding per se violations of ERISA was the very one that Plaintiffs had represented to Judge Schiltz that they were not pursuing in this litigation. Moreover, as is evident from the background summary provided above, Plaintiffs' contention that more causes of action were contemplated to be litigated after Phase I is contrary to their own positions taken throughout these cases.

Plaintiffs waited too long before seeking leave to amend to add the contested allegations, causes of action, and requests for relief. Plaintiffs did not just learn of the facts underlying these claims. Indeed, they made factual allegations regarding Defendants' status as fiduciaries back in 2014 when the original Peterson Complaint was filed, and pled a § 1132(a)(2) fiduciary breach cause of action in the *Riverview* case when that original Complaint was filed in July 2015. Over and over again, Plaintiffs have made arguments relating to fiduciary duties in briefing to the Court throughout Phase I. And the Court's orders, at a minimum, provided Plaintiffs with an opportunity to timely follow-up with a request to amend. Plaintiffs did not. Instead, Plaintiffs waited until after summary-judgment rulings (rulings that analyzed fiduciary duties as it pertained to the *Finley* factors and as such were rulings that Judge Schiltz had indicated that he only wanted to address once) and an appeal to the Eighth Circuit concluded. This four to five years period of delay is undue delay.[18] *See Soo Line R. Co. v. Werner Enterprises*, No. 12-1089

---

[18]    In making this Order, the Court is in no way commenting on whether fiduciary duties or prohibited transaction related facts and arguments are already encompassed by Plaintiffs' existing § 1132(a)(1)(B) and § 1132(a)(3) claims, which still remain in the case at this time. The Court here is simply ruling that Plaintiffs are too late to add the disputed amendments.

(DSD/JSM), 2013 WL 3771391, at *1–2 (D. Minn. July 17, 2013) (affirming the denial of motion for leave to amend under Rule 15 for undue delay); *see also In re Acceptance Inc. Cos., Sec. Litig.*, 352 F. Supp. 2d 928, 933 (D. Neb. 2003) ("[T]he Eighth Circuit Court of Appeals . . . has stated that when a motion to amend a complaint is based on allegedly new information that the plaintiff knew, or through the exercise of reasonable effort could have known at an earlier time, the motion should be denied.").

**B.**     **Defendants Would Suffer Prejudice if Plaintiffs Were Granted Leave to File another Amended Complaint as Proposed**

This case has gone through years of litigation on what was supposed to be the threshold issues in the case. Within Phase I of the case, extensive discovery was exchanged, two motions for summary judgment were briefed and argued, and an Eighth Circuit appeal was exhausted with liability determined – all on the issues that Plaintiffs agreed were the threshold issues in the case on Counts I and II. Plaintiffs had indicated that if they won on these threshold issues, this case should then proceed directly to class certification (in *Peterson*) and then damages. (*See* Case No. 14-2101, Doc. No. 159, Pls.' Reply Mem. 18; Case No. 15-3064, Doc. No. 106, Pls.' Reply Mem. 18 (requesting the Court to "grant Plaintiffs' Renewed Motion for Partial Summary Judgment on Liability" and to "direct the parties to commence class certification discovery"); Case No. 15-3064, Doc. No. 148-1, 2/12/19 informal letter submission.) Adding new causes of action that potentially trigger new claims for recovery would fundamentally alter the nature of this case and result in undue resources expended by Defendants in litigating this case. *See Lee v. Driscoll*, No. CIV14-4146, 2016 WL 1337248, at *4 (D.S.D. Mar. 31, 2016) (finding

prejudice where plaintiffs "did not move to amend the complaint until after discovery had closed and on the same day that Defendants filed a motion to dismiss and for summary judgment based on the claims in the current complaint").

Plaintiffs argue that there is no prejudice because Defendants would not need to conduct any additional discovery. To the contrary, Defendants would be entitled to fact and expert discovery regarding the Plaintiffs' claims, and also discovery not foreseen relating to the adequacy of proposed class representatives for the new claims. *See McAninch v. Wintermute*, 491 F.3d 759, 766–67 (8th Cir. 2007) (affirming denial of leave to amend where "the proposed amendment could have resulted in the burdens of additional discovery and delay to proceedings"); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004) ("[W]hen late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion due to the prejudice involved.") (quotations omitted); *Johnson v. BE & K Constr. Co.*, No. 3:08-CV-00150-RP-RAW, 2010 WL 11493755, at *2 (S.D. Iowa Mar. 5, 2010) (finding prejudice because "allowing a new claim at this point in the litigation may require reopening discovery . . . and summary judgment proceedings would likely be delayed to permit both sides to supplement their motion papers to address the fact a new claim has entered the case"). Therefore, Defendants would be prejudiced if Plaintiffs were granted leave to amend.

**ORDER**

Based on the above, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Motions for Leave to File Second Amended Complaints (Civ. No. 14-2101, Doc. No. 193; Civ. No. 15-3064, Doc. No. 132) are **DENIED**.

2.      Plaintiffs may file an Amended Complaint in conformity with this Order and which incorporate only the agreed-upon proposed amendments as described by Defendants in their opposition on or before **April 17, 2019**. Therefore, the following paragraphs must be removed from Plaintiffs' proposed Amendment Complaints: in the *Peterson* Complaint, paragraphs 6, 18, 21, 26, 30, 31, 33, 40, 49, 50, 51, 52, 55, 56, 57, 58, and Prayer for Relief sub-sections (B), (C), (F), and (H); in the *Riverview* Complaint, paragraphs 6, 39, 40, 42, 48, 51, 52, 53, 54, and Prayer for Relief sub-sections (A), and (B).


Date: April 12, 2019.

*s/ Becky R. Thorson*_____
BECKY R. THORSON
United States Magistrate Judge
